# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| TESSY L. BELL, | ) |
| Petitioner, | ) ) ) |
| vs. | ) Case No. 12-0179-CV-W-ODS-P |
| JEAN ANN JOHNSON, | ) ) ) |
| Respondent. | ) ) |

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS, AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Tessy Bell, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on February 1, 2012, seeking to challenge his 2007 convictions and sentences for voluntary manslaughter and armed criminal action, which were entered in the Circuit Court of Jackson County, Missouri.

Petitioner's sole ground for relief is that trial counsel was constitutionally ineffective in failing to interview, subpoena, and call LaTanya Johnson as a witness for the defense. Respondent counters that the petition is untimely, and that petitioner's sole ground for relief is without merit. Because it is "considerably easier and thus more judicially efficient" to decide the petition on the merits, the Court will pursue that course of action. Jones v. Bowersox, 28 Fed. App'x 610, 611 (8th Cir. 2002) (unpublished) (citing Barrett v. Acevedo, 169 F.3d 1155, 1162 (8th Cir. en banc 1999).[1]

## SUMMARY OF FACTS

On appeal from the denial of petitioner's Mo. Sup. Ct. Rule 29.15 motion, the Missouri Court of Appeals summarized the facts as follows:

> On April 20, 2005, [petitioner] and several other people were at the home of [petitioner]'s cousin, Alice Carballo. Alice Carballo's

---

[1] At this point in time, the Court makes findings regarding respondent's statute of limitations defense.

husband, Rolando Carballo, n.2 arrived home later in the afternoon. After Rolando arrived, the Carballos began to argue and shove each other. When [petitioner] saw the Carballos fighting, he showed Alice a pistol and asked her if he could hit Rolando with it. Alice told [petitioner] that she did not want him to hit Rolando with the pistol, so [petitioner] used the pistol to fire a shot inside the house. The shot hit a wall.

> n.2 We will refer to Alice Carballo and Rolando Carballo by their first names. No familiarity is intended.

Following the gunshot, the guests in the Carballos' house went outside. Alice told [petitioner] to leave. Alice, Rolando, and [petitioner] then went out to the front porch. Alice again told [petitioner] to leave. [Petitioner] started to walk to his car but turned and fired a shot toward the porch. Rolando held a chair in front of himself and cursed at [petitioner]. Alice continued to tell [petitioner] to leave. [Petitioner] shot the gun again before walking to his car. When [petitioner] reached his car, Rolando put down the chair. [Petitioner] turned around, however, and fired another shot at Rolando. This time, the shot hit Rolando in the center of his forehead, killing him. [Petitioner] drove away, while one of Alice's daughters, Chanelle Ramsey, called the police. When the police arrived, Ramsey told them that [petitioner] was the shooter.

While the police were still at the Carballos' house, [petitioner] called. Another of Alice's daughters, Roniesha Ford, answered the phone. [Petitioner] asked Ford if the police were there, and he told her that if the police were there, Ford should tell them that "he didn't do it." Ford gave the phone to the police, but [petitioner] hung up. Caller identification indicated that [petitioner] was calling from the home of his fiancee, LaTanya Johnson.

The police went to Johnson's house looking for [petitioner]. One of the officers saw [petitioner] come out of the front door and go into the backyard. After taking [petitioner] into custody, the officers found a gun under a shed in the backyard. Crime lab analysis later determined that the gun was the same gun that fired the bullet that killed Rolando.

When the police interviewed [petitioner] the day after the shooting, he denied being aware of any shooting. He claimed that he was at Johnson's house at the time of the shooting. He also claimed that he had not seen Rolando at all on the day of the shooting. When asked if he shot Rolando, [petitioner] said that he did not "remember" shooting

> him.
>
> The State subsequently charged [petitioner], as a prior and persistent offender, with second-degree murder and armed criminal action. A jury trial was held. [Petitioner]'s defenses at trial were that he acted in self-defense and in defense of others when he shot Rolando. To support these defenses, [petitioner] relied upon the fact that crime scene investigators recovered an open, four-inch folding knife by Rolando's hand. Additionally, [petitioner] offered his own testimony. [Petitioner] testified that Alice pulled out the gun when she and Rolando began fighting. [Petitioner] claimed that he did not fire the first shot inside the house, but rather, the shot was fired when Alice and Rolando were struggling over the gun. [Petitioner] testified that he intended to leave the house with the gun to keep Rolando from hurting Alice. [Petitioner] testified that, as he was walking down the steps from the front porch, he heard someone yell, "Tessy, look out." [Petitioner] claimed that, at that point, he turned around, saw Rolando coming at him with a knife, and fired a shot because he feared for his life and the lives of the other people there. [Petitioner] testified that he initially lied to the police about the shooting because he is a convicted felon, and he was scared about getting in trouble for having a gun.
>
> The State refuted [petitioner]'s claims of self-defense and defense of others with the testimony of several persons who witnessed the incident. The State also offered the testimony of a medical examiner. The medical examiner opined that, based upon the characteristics of Rolando's wound, the shot was fired from more than an arm's length away from Rolando's head.
>
> The jury found Bell guilty of the lesser-included offense of voluntary manslaughter and armed criminal action. . . .

(Petitioner's Exhibit K, pp. 2-4).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and convincing

-3-

evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[2] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

### GROUND 1

In his sole ground for relief, petitioner contends that trial counsel was constitutionally ineffective in failing to interview, subpoena, and call LaTanya Johnson as a witness for the defense. On collateral review, the Missouri Court of Appeals found this claim to be without merit.

Federal habeas review of petitioner's ineffective assistance of counsel claim is "doubly deferential." Knowles v. Mirzayance, 556 U.S. 111, 129 S. Ct. 1411, 1420 (2009). First, petitioner must overcome the high bar of Strickland v. Washington, 466 U.S. 668 (1984), by showing that (1) counsel's performance fell below an objective standard of reasonableness; and (2) petitioner was sufficiently prejudiced such that "the result of the proceeding would have been different." Id. at 688, 694. Second, under 28 U.S.C. § 2254, petitioner must show that the state court's adjudication of his ineffective assistance claim was "unreasonable." Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 788 (2011). Both the Strickland standard and the standard set forth in § 2254 are highly deferential. Ultimately, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Richter, 131 S. Ct. at 788.

On appeal from the denial of his Mo. Sup. Ct. Rule 29.15 motion, the Missouri Court of Appeals disposed of petitioner's ground as follows:

---

[2]"In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-4-

In his sole point on appeal, [petitioner] contends that defense counsel was ineffective for failing to interview, subpoena, and call as a defense witness at trial his fiancee, LaTanya Johnson. To succeed on a claim that defense counsel was ineffective for failing to call a witness, a defendant must show that (1) defense counsel knew or should have known of the witness's existence, (2) the witness could be located through reasonable investigation, (3) the witness would have testified if called, and (4) the witness's testimony would have provided a viable defense. *Hutchison v. State*, 150 s.W.3d 292, 304 (Mo. banc 2004). "Counsel's decision not to call a witness is presumptively a matter of trial strategy and will not support a claim of ineffective assistance of counsel unless the defendant clearly establishes otherwise." *Id.*

[Petitioner] asserts that Johnson's testimony would have supported his claims of self-defense and defense of others. At the evidentiary hearing, Johnson testified that, during the six years that she had dated [petitioner], she and [petitioner] had spent "quite a bit" of time at the Carballos' residence. Johnson testified that she had seen Rolando with a knife, a box cutter, and a gun on several occasions. She said that, as far as she knew, [petitioner] neither owned nor carried a gun.

Johnson also testified about the veracity of a statement the prosecutor made during opening statement. Specifically, the prosecutor said that the State would present evidence that, before the shooting, [petitioner] had gone to Johnson's home, picked up a gun, and returned to the Carballos' house. The prosecutor further alleged that the evidence would show that Johnson then called the Carballos and asked them what was going on at their house that caused [petitioner] to retrieve his gun. At the evidentiary hearing, Johnson testified that, contrary to the prosecutor's opening statement, she did not see [petitioner] with a gun on the day of the shooting, and she never called the Carballos to ask about [petitioner]'s getting a gun. Johnson testified that she talked to an investigator with the public defender's office and was available and willing to testify at [petitioner]'s trial.

Defense counsel testified that, when [petitioner]'s case was reassigned to her after it was initially assigned to a different public defender, she reviewed the discovery and the investigator's notes. Although her own notes indicated that she spoke to Johnson at least once, defense counsel did not remember talking to her. Defense counsel could not remember why she did not call Johnson as a witness. Defense counsel remembered that she believed that the best defense strategy for [petitioner] was self-defense, because "[t]here was no question the victim had a knife in his hand when he died." Defense counsel further testified that Johnson's proposed testimony about not seeing

-5-

Case 4:12-cv-00179-ODS   Document 8   Filed 05/08/12   Page 5 of 8

[petitioner] with a gun on the day of the shooting would not have changed her defense strategy at all. Defense counsel testified, "In looking back at it, I would consider [Johnson's testimony] at best a wash."

[Petitioner] failed to overcome the presumption that defense counsel's decision not to call Johnson as a witness was anything other than reasonable trial strategy. Both the public defender's investigator and defense counsel interviewed Johnson before [petitioner]'s trial. Defense counsel's testimony that she was unable to remember why she did not call Johnson as a witness was not sufficient to overcome the presumption that her decision not to call Johnson was strategic. *Bullock v. State*, 238 S.W.3d 710, 715 (Mo. App. 2007). "Where, as here, trial counsel does not remember the reason for making a strategic decision, there is a failure to overcome the strong presumption that the decision was made as a part of a reasonable trial strategy." *Id.*

Moreover, [petitioner] failed to demonstrate that he suffered prejudice as a result of defense counsel's decision not to call Johnson. There was "no question" that Rolando was carrying a knife at the time of the shooting. The police officer who first responded to the scene testified that he saw an open, four-inch folding knife in Rolando's hand. Rolando's wife and two step-daughters testified that Rolando regularly carried a knife. Johnson's proposed testimony that she, too, knew that Rolando carried a knife would have been merely cumulative. "Failing to present cumulative evidence is not ineffective assistance of counsel." *State v. Johnson*, 957 S.W.2d 734, 755 (Mo. banc 1997).

As for Johnson's proposed testimony that [petitioner] never carried a gun, that she did not see [petitioner] retrieve a gun from her house on the day of the shooting, and that she did not call the Carballos' house to ask why [petitioner] had retrieved a gun, we find such testimony to be irrelevant in light of [petitioner]'s claims that he acted in self-defense and in defense of others. "When claiming self-defense, one acknowledges intentionally inflicting injury or death on another person while asserting such conduct was necessary because of apprehension of great bodily harm or death." *State v. Houcks*, 954 S.W.2d 636, 638 (Mo. App. 1997). [Petitioner] admitted that he used a gun to shoot and kill Rolando. It was inconsequential whether the gun was his or someone else's or whether he brought the gun or found it at the scene. Counsel will not be deemed ineffective for failing to present irrelevant evidence. *Bradley v. State*, 995 S.w.2d 522, 523-24 (Mo. App. 1999). n.3

n.3 Moreover, the State failed to

> > present any evidence to support its assertion that Johnson called the Carballos' house to ask why [petitioner] had retrieved a gun. Defense counsel testified at the evidentiary hearing that she made the strategic decision to point out the State's failure to present evidence regarding the alleged phone call during her closing argument. We find her decision to address the issue in this manner, instead of calling Johnson to refute the evidence that the State never put on, to be reasonable trial strategy.
>
> Because [petitioner] failed to overcome the presumption that defense counsel's decision not to call Johnson was reasonable trial strategy and failed to established that he was prejudiced by that decision, he was not entitled to relief on his ineffective assistance of counsel claim. We, therefore, affirm the circuit court's judgment denying [petitioner]'s Rule 29.15 motion for post-conviction relief.

(Respondent's Exhibit K, pp. 5-8).

The resolution of ground 1 by the state court did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000).[3] Applying the <u>Richter</u> standard of review to the facts as set forth in the record, a reasonable argument can be made that counsel's actions did not fall outside of the wide spectrum of

---

[3] According to the concurrence of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 413.

-7-

allowable representation under Strickland. Richter, 131 S. Ct. at 788.

Petitioner's sole ground for relief is denied, and the case will be dismissed, with prejudice.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for writ of habeas corpus is denied;

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.

 /s/ Ortrie D. Smith
ORTRIE D. SMITH
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,
Dated:  May 8, 2012.

-8-

Case 4:12-cv-00179-ODS   Document 8   Filed 05/08/12   Page 8 of 8